### STATE v. McGRAW.

Common Pleas Court, Scioto County.

No. 18689A.   Decided June 27, 1961.

*Mr. Everett Burton,* prosecuting attorney, for the State.
*Mr. Ernest G. Littleton,* for defendant.

THOMPSON, J. This case is now before this Court on the defendant's plea of double jeopardy to the first count of an indictment returned by the Scioto County Grand Jury on April 3, 1961, and the State's demurrer to said plea. We find it advisable to review the file in this case for the purpose of simplifying the issues involved.

The Grand Jury of Scioto County returned an indictment against the defendant on December 5, 1960, which reads as follows:

"The Jurors of the Grand Jury of said County, on their

oaths, in the name and by the authority of the State of Ohio, do find and present that Rufus A. McGraw, on the 17th day of November, in the year of our Lord one thousand nine hundred and sixty (1960), at the County of Scioto aforesaid, unlawfully, purposely and while in the perpetration of Robbery, did inflict certain blows upon and about the head of one DAVID MYERS, which caused the death of the said David Myers on the 23rd day of November, 1960.

"Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Ohio."

To this charge, the defendant entered a plea of "not guilty" and on the 20th day of March, 1961, was placed on trial before a jury in this court. On the 28th day of March, the following journal entry was signed by the Judge presiding at that trial:

"Upon Motion of the Defendant, by and through his Counsel, that the Indictment herein returned for First Degree murder is defective and that it fails to allege a purpose to kill specifically, which the Defendant represents to be an essential element to the crime of Murder in the First Degree, it is the finding of the Court that said Motion is well taken in that there is a mistake in said Indictment as represented by the Defendant.

"This cause coming on further upon the Motion of the Prosecuting Attorney of Scioto County, Ohio, to amend the Indictment to correct said mistake, the same is hereby overruled.

"Now, on Motion of the State, during the trial of this cause and after the submission of certain evidence and before submission of the matter to the Jury, that a mistake has been made in charging the proper offense in the Indictment against the Defendant, it is ordered that the within cause be discontinued without prejudice to the prosecution, and this cause is dismissed.

"But it appearing that there is good cause to detain the said Defendant in custody, it is ordered that he be held without Bond and that this cause be presented to the April session of the Grand Jury of Scioto County, Ohio, for this, the January Term thereof, and such further proceedings as are proper thereafter in the premises, and this order of discontinuance

of trial is made without prejudice to the further prosecution of the Defendant and pursuant to Section 2945.14, Revised Code.

"Exceptions of the Defendant are noted to the Motion of the Prosecuting Attorney respecting the discontinuance of this cause."

Following this, on the 3rd day of Aprill, 1961, the Grand Jury returned a further indictment against the defendant, the first count of which reads as follows:

"The Jurors of the Grand Jury of said County, on their oaths, in the name and by the authority of the State of Ohio, do find and present that Rufus A. McGraw, late of said County, on the 17th day of November, in the year of our Lord one thousand nine hundred and Sixty (1960), at the County of Scioto aforesaid, unlawfully, purposely and while in the perpetration of robbery, killed one DAVID MYERS, by then and there inflicting certain blows about the head of one David Myers, which caused the death of the said David Myers on the 23rd day of November, 1960."

The second count of the indictment charged the defendant with "armed robbery." To the second count of the indictment the defendant entered a plea of "not guilty," but to the first count, above quoted, the defendant on the 12th day of June, 1961, filed a plea of former jeopardy which reads as follows:

"The said Rufus A. McGraw in his own person comes into court here and having waived the reading of the within indictment says that the State of Ohio ought not further to prosecute the first count of said indictment against him, the said Rufus A. McGraw, in respect to the offense in the first count of said indictment mentioned because that, heretofore, on the 5th day of December, A. D., 1960, at the term of the Court of Common Pleas, begun and holding in the City of Portsmouth, in the County of Scioto and State of Ohio, the Grand Jurors chosen, selected and sworn in and for the said County of Scioto in the name and by the authority of the State of Ohio, upon their oaths, presented a valid indictment against him, the said Rufus A. McGraw, which said indictment is in the words and figures following, to-wit;

"The State of Ohio, Scioto County, ss: Court of Common Pleas

Of the Term of September, in the Year of our Lord, one thousand nine hundred and sixty.

The Jurors of the Grand Jury of said County, on their oaths, in the name and by the authority of the State of Ohio, do find and present that Rufus A. McGraw, on the 17th day of November, in the year of our Lord one thousand nine hundred and sixty (1960), at the County of Scioto aforesaid, unlawfully, purposely and while in the perpetration of robbery, did inflict certain blows upon and about the head of one David Myers, which caused the death of the said David Myers on the 23rd day of November, 1960.

"Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

Everett Burton, Prosecuting Attorney"

"Said indictment bears the number 18689 and contains an endorsement as follows: 'A True Bill' and is also endorsed by Allen J. Slattery, Foreman Grand Jury, Said indictment was filed in the office of the Clerk of Courts, Scioto County, Ohio, on the 5th day of December, 1960.

"Under said last mentioned indictment the said Rufus A. McGraw was arraigned and pleaded not guilty, and the State of Ohio joined issue on said plea; that afterwards, to-wit, on the 20th day of March, A. D., 1961, in the said Court of Common Pleas, before a Jury duly and regularly summoned, impaneled and sworn to try the said issue joined as aforesaid, the said Rufus A. McGraw was duly placed upon trial and the trial proceeded when said jury was discharged by the court upon motion of the Prosecuting Attorney of Scioto County, Ohio, for a discontinuance of said cause, without the consent of the defendant, the said Rufus A. McGraw, and over and against his protest and objection, and without any special cause recognized by law, there being no special necessity for the discontinuance of said cause, and the discharge of said Jury. That said Court of Common Pleas was and is a court of competent jurisdiction to try the cause so discontinued as aforesaid, and the said Rufus A. McGraw further says that he, the said Rufus A. McGraw, and the said Rufus A. McGraw so indicted and placed on trial as aforesaid are one and the same person and

not other and different persons and that the homicide of which he, the said Rufus A. McGraw, was so indicted and placed on trial as aforesaid, and the homicide of which he, the said Rufus A. McGraw, is now indicted in the first count thereof, are one and the same offense and not other and different offenses. Both the former indictment of December 5, 1960, and the first count of the present indictment allege that the defendant unlawfully caused the death of David Myers, and both the indictment of December 5, 1960, and the first count of the present indictment require the same evidence to support a conviction. And this the said Rufus A. McGraw is ready to verify.

"WHEREFORE, he prays judgment that he, the said Rufus A. McGraw, may be dismissed and discharged from the first count of this indictment."

Prior to filing the plea of former jeopardy, other motions were filed against the second indictment and were ruled upon by the Court, but they have no specific bearing upon the question now before the Court and the details of said motions to the same are given no present consideration in passing upon the question now for determination.

To the defendant's plea of double jeopardy, the Prosecuting Attorney filed a demurrer as follows:

"Now comes the Prosecuting Attorney of Scioto County, Ohio, and demurs to the defendant's plea in this cause filed for the following reasons, to-wit:

"1. The entry of the Court filed herein on March 28, 1961, admits of no dispute that this cause upon the original hearing was discontinued pursuant to Section 2945.14, Revised Code, when a mistake charging the proper offense was found, and in accordance with that Section the entry specifically provides 'without prejudice to the further prosecution of the defendant.'

"2. The proceedings had in this cause at the original hearing do not constitute former jeopardy.

"3. In addition to the statute above, the Court has the inherent power to discharge a jury before a verdict whenever an urgent necessity appears without barring further prosecution of the accused.

"4. The record clearly shows that the defendant was not once in jeopardy."

The Prosecuting Attorney has filed a memorandum in support of the demurrer and the defendant has filed a memorandum contra to the demurrer and it is the issues presented by these pleadings that the Court is now considering.

It has been said by many courts, that the right not to be put in jeopardy a second time for the same cause, is as important as the right of trial by jury and is guarded with as much care. Accordingly, there is found in the Constitution of the United States and in the Constitutions of most of the separate States, a provision that no person shall for the same offense be twice put in jeopardy, which is only a recognition by the people in the adoption of the Constitutions of the common law rule.

In Ohio, the provision is found in Article I, Section 10 of the Bill of Rights and it reads as follows: "No person shall be twice put in jeopardy for the same offense." This being a constitutional right, neither the legislature, nor the courts can deprive a citizen of this right, if in fact, it exists.

Judge Wanamaker of the Ohio Supreme Court in the case of *State* v. *Billotta*, 104 Ohio St., 13, said, "The people in their paramount law, the Constitution, having made provision as to former jeopardy, neither the legislature, nor a court, nor any other agency of government has any right to add to or substract from the plain and usual meaning of the constitutional provision."

The protection thus afforded is not only against the peril of second punishment, but against being tried for the same offense.

The Supreme Court of the United States in the case of *Green* v. *United States*, reported in 355 U. S., 184, in explanation of double jeopardy under the Fifth Amendment of the Federal Constitution held:

"The provisions of the Fifth Amendment against double jeopardy is designed to protect an individual from being subjected to the hardships of trial and possible conviction more than once for an alleged offense. The underlying idea is, that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby, subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state

of anxiety and insecurity, as well as, enhancing the possibility that even though innocent, he may be found guilty."

When considering the question of whether or not a defendant is being placed in double jeopardy, the first question that always presents its-self is "When is a person in jeopardy? or "When does jeopardy attach?" The courts have almost uniformly held that, generally, a person is in legal jeopardy when he is put on trial before a court of competent jurisdiction on an indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. A jury is said to be thus charged when it is impaneled and sworn. (15 Amer. Jur. Criminal Law, Section 369.)

The term "jeopardy" means exposure to danger; and where a person is put on his trial on a charge of a crime before a jury sworn to decide the issue between the state and himself, he is then exposed to danger in that he is in peril of life or liberty. Constitutional provisions against double jeopardy do not apply unless an accused has, theretofore, been placed on trial.

The rule that former conviction or acquittal may be pleaded in bar of a second indictment for the same offenses assumes that it is a lawful acquittal or conviction. So, if an indictment is so defective that judgment would be arrested on conviction as, for instance, where no offense is stated in the indictment, then an acquittal, thereon, will not operate as a bar to a subsequent trial for the same offense. However, if the indictment on which the accused was first tried is not void, but merely defective in some immaterial manner so that a valid and legal conviction could have been procured on it, notwithstanding the defect, an acquittal may be pleaded in bar of a subsequent indictment for the same offense. The distinction must be kept in mind between stating a charge defectively and a failure to state any charge. (Amer. Jur. Criminal Law, Section 374-375.)

Both the common law rule and the constitutional provision declaratory thereof, against a second jeopardy, apply only to a second prosecution for the same act and crime, both in law and in fact, for which the first prosecution was instituted. It must appear that the defendant upon the first charge, could

have been convicted of the offense upon the trial in the second. By the term "same offense" is meant, not only the same offense as an entity and designated as such by legal name, but also any integral part of such offense which may subject an offender to indictment and punishment. When an integral part of the principal offense is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for a lesser offense will bar a prosecution for a greater.

The courts have almost uniformly held that in a determination of whether both indictments charge the same offense, the test generally applied is, that when facts necessary to convict on the second prosecution would have convicted on the first, a final judgment on the first prosecution will be a bar to the second one; but if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although, the offense charged may have been committed by the same state of facts. (15 Amer. Jur. Criminal Law, Section 380. cases collected in Footnote 16—*State* v. *Rose*, 89 Ohio St., 833:—*State* v. *Corwin*, 106 Ohio St., 638.)

Although the indictment upon which the defendant went to trial in this case was defective to charge, Murder in the First Degree or Second Degree, there is perhaps no question that the indictment did charge the offense of Manslaughter and that it was a valid indictment of the offense of Manslaughter, and that the jury under the indictment, had the case been concluded and submitted to the jury could, no doubt, have convicted him of Manslaughter. Manslaughter being a lesser offense than Murder, we must next consider the effect of acquittal or conviction of a lesser offense as a bar to a greater offense.

The general rule on this proposition as stated in 15 Amer. Jur. Criminal Law, Section 386 is that, if a minor offense is embraced within a higher crime as a constituent element or component part, and on the trial of the higher offense, there could be a conviction of the minor offense, a conviction of the minor offense will bar a prosecution for the higher crime unless the first conviction was procured by fraud, connivance or collusion of the defendant.

There is little doubt that the offense of Manslaughter as charged in the first indictment, is embraced within the crime of Murder and if the defendant were to be tried on the second indictment for Murder, that he could be convicted of the lesser offense of Manslaughter. It would logically follow, therefore, that if the defendant has had the benefit of a legal acquittal on the charge of Manslaughter, that he can not now be tried on the greater offense of Murder which includes Manslaughter.

The rules were clearly stated by the Supreme Court of Tenessee in the case of *Dowdy* v. *State*, 158 Tenn., 364, and reaffirmed in *Usary* v. *State*, 112 S. W. (2d), in 1937, as follows:

"(1) When two or more offenses of the same nature are by Statute carved out of the same transaction and are properly the subject of a single investigation, an acquittal or conviction for one of the several offenses bars subsequent prosecution for the other."

"(2) When the facts constitute but one offense, although it may be susceptible of division into parts, as for stealing several articles from the same person at the same time, conviction for stealilng one of the articles will bar subsequent prosecution for stealing others.

"(3) When the facts constitute two or more offenses, wherein, the lesser offense is necessarily involved in the greater, as an assault is involved in an assault and battery, as an assault and battery is involved in an assault and battery with intent to commit felony and as a larceny is involved in a robbery, and when the facts necessary to convict on a second prosecution would necessarily convict on the first, then the first prosecution to a final judgment will be a bar to the second.

"(4) But when the same facts constitute two or more offenses wherein the lesser offense is not necessarily involved in the greater and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although, the offenses were both committed at the same time and by the same act."

Some of the cases from other jurisdictions bearing upon this same question are as follows:

"Where, on a trial for assault and battery, in a court having jurisdiction to finally determine the charge, it appears that

the offense was an assault with intent to rape, the accused having been in jeopardy under the charge of assault and battery, he could not be bound over to answer the charge of assault with intent to commit rape." *State* v. *Blevins*, supreme Court of Alabama, 32 Southern, 637.

"Where a person has been put in legal jeopardy of a conviction of an offense which is a necessary element in and constitutes an essential part of another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded upon the same act."

Accordingly, where a person was put upon his final trial for an alleged assault and battery upon a woman and after the evidence had been closed, the court, without his consent, discharged the jury and bound the accused over for the offense of assault with intent to commit rape, the prosecution upon this latter charge could not, as against the plea of former jeopardy, be sustained. *Bell* v. *State*, Supreme Court of Georgia, 30 Southeastern, 294.

"That a *Nolle Prosequi* was entered without the prisoners consent after the issue was joined and the jury was sworn, will bar a subsequent indictment for the same assault with intent to murder, where the first indictment alleged that offense and was good and sufficient for a simple assault, even if, not so for the aggravated assault charge. There can be no second jeopardy as to either grade of assault, and as the major includes the minor, the second indictment comprehends the same simple assault of which the accused was acquitted on the first indictment." *Franklin* v. *State*, Supreme Court of Georgia, 11 Southeastern, 876. Holding to the same effect, the Supreme Court of California in *People* v. *Ng Sam Chung*, 29 Pacific, 642.

In *State* v. *Durbin*, Supreme Court of Washington, 73 Pacific, 373, the court said at Page 374:

"As the case stood at the time of the trial, therefore, the appellant was being tried for an offense after he had been acquitted for a minor offense included within that offense, and the pertinent question is, 'Will an acquittal for a minor offense included in a greater, bar a prosecution for a greater?' The question is not answered alike in all jurisdictions, but it seems to us that the weight of authority, as well as the better reason, are within the rule that it is such a bar."

Since the jury was not given an opportunity to decide the guilt or innocence of the defendant at the trial on the first indictment and were discharged by the court, we are required now to consider the affect that the discharge of the jurors before verdict had, upon the jeopardy of the defendant. As we stated earlier in this opinion, the general rule, and the rule adopted in Ohio is, that a prisoner is in legal jeopardy when he is put on trial, after a proper arraignment and plea, before a court of competent jurisdiction on an indictment or information which is sufficient in form and substance to sustain a conviction, and a legally constituted jury has been charged with his deliverance. 15 Ohio Jurisprudence (2d), Criminal Law, Section 261.

The courts have been called upon many times to pass upon the authority of a court to discharge a jury during trial and before a verdict is reached, without affecting the defendant's constitutional rights. It is stated as a general rule that, after a jury is impaneled and the introduction of evidence is started, the accused has a right to demand such a disposition of the case, either by verdict of the jury or otherwise, as will bar another prosecution for the same crime; and for the court or Prosecuting Attorney to deprive him of his right by entry of a *Nolle Prosequi* or by discharge of the jury without an absolute necessity therefore, and without his consent thereto, operates as a bar to any further or subsequent prosecution for the same offense. Ohio Jurisprudence (2d), Criminal Law, Section 274.

The rule has been interpreted in many cases, by a more specific holding, that although the court may discharge the jury without the consent of the prisoner after the cause is submitted, but before verdict, whenever a legal necessity for such discharge occurs, without, thereby, exonerating the accused from the liability of being again put upon trial under the same indictment, it is, nevertheless, only in case of absolute necessity that a jury impaneled and sworn to try a cause can, except with the consent of the accused, be discharged without affecting jeopardy. 15 Ohio Jurisprudence, Criminal Law, Section 275 and the cases cited in Note 6, Page 455.

In *Ingram* v. *State, Supreme Court of Georgia,* 52 South-

eastern, 759, the court at Page 759 said, "Where the indictment or accusation is not fatally defective, the law recognizes two reasons only as justifying the discharge of the jury before they have agreed upon a verdict and legally returned it into court, viz; the prisoners consent and necessity in some of its various forms, one of which is mistrial."

Specific grounds which have been held by the courts of the various states to be sufficient to authorize the discharge of the jury before verdict, without affecting the constitutional rights of the accused are too numerous and would involve too much time and space to enumerate here, but they do to a great extent involve the sickness and death of the defendant, Judge, or juror; the corruption of a juror; fraud and collusion; accident or calamity and the improbability of the jury agreeing. Most of these grounds have now been included in the Criminal Code of Ohio, Section 2945.36, Revised Code, which reads as follows:

"The trial court may discharge a jury without prejudice to the prosecution:

(A) For the sickness or corruption of a juror or other accident or calamity;

(B) Because there is no probability of such jurors agreeing;

(C) If it appears after the jury has been sworn that one of the jurors is a witness in the case;

(D) By the consent of the prosecuting attorney and the defendant.

The reason for such discharge shall be entered on the journal."

The law, however, has not been changed substantially and still is to the effect that when it is plain and manifest that the jury in a criminal trial were discharged without the consent of the accused, for a reason which the law does not recognize as a necessity, or for a reason apparently constituting such legal necessity, but the existence of which is not established by facts, the integrity of the constitutional provision can be preserved only by holding any judgment rendered upon a further trial, erroneous. 15 Ohio Jurisprudence (2d), Criminal Law, Section 275 citing *Dobbin* v. *State*, 14 Ohio St., 493.

A collection of cases from various states is contained in

the opinion of the Supreme Court of New Jersey in *State* v. *Locklear*, 108 Atlantic (2d), 436, wherein, both the State and Defendant rested in a trial which had consumed nineteen (19) days and the State then discovered new evidence which implicated two others in the murder for which the defendant was being tried and which did exculpate rather than incriminate the defendant and the State then obtained a mistrial for the purpose of obtaining a new indictment charging the defendant and the two others jointly, with the murder and the Grand Jury returned a new indictment to which the defendant entered a plea of double jeopardy. The court in sustaining the plea said, "The record does not show it was 'Impossible' to proceed with the original trial, and the circumstances relied on did not create an absolute or over-riding necessity, nor did they constitute 'sufficient legal reason' for a mistrial as required by many cases."

These, according to the vast weight of authority, are the only criteria which will lawfully warrant the dismissal of a jury without the defendant's consent in a criminal case after it has been impaneled.

We are, regretfully, compelled to conclude that what occurred here was tantamount to an arbitrary discharge of the jury without sufficient legal justification.

Assuming a failure of justice in the instant case, it is outweighed by the general personal security afforded by the great principle of freedom from double jeopardy. Such mis-adventures are the price of individual protection against arbitrary power.

The reason for discharging the jury in this case before verdict was the discovery of the fact that the indictment did not charge the defendant with murder. The portion of the record dealing with the discharge of the jury is set forth in defendant's memorandum as follows:

"*MR. BURTON*:

"In view of the holding of the Court that there is a mistake in the indictment as it now stands, on behalf of the State of Ohio, I move the Court to order a discontinuance of the case as it now stands and that Rufus McGraw be held to the Grand Jury without bond, to be investigated by the Grand Jury and that this case be without prejudice.

*"MR. LITTLETON:*

"I would like the Court to know what our position is: this Jury was impaneled and sworn and the defendant stands in legal jeopardy as to the indictment that has been presented and any such discontinuance and if there is such a new indictment it would be double jeopardy.

*"JUDGE SMITH:*

"Pursuant to the statute the Court is authorized, if it is satisfied that a mistake has been made in the indictment and the indictment does not aver what the Grand Jury intended to aver, it is within the province of the presiding judge to order a discontinuance on a new trial.

"The Defendant will be held to the next Grand Jury without bond; without prejudice to be further prosecuted.

*"MR. BURTON:*

"To all of which the Defendant, by and through his counsel objected and excepted and asks that such exception be noted in the record.

*"JUDGE SMITH:*

"The exhibits may be returned to the prosecution for further proceedings.

"This completes this hearing. I certainly, naturally we are sorry that this occurred but in the trial of these cases we do have difficulty. This is so that complete justice can be done .... May I express my appreciation for your services here and you are now excused."

The court discharged the jury pursuant to Section 2945.14, Revised Code, which provides:

*"Mistake in charging offense:* If it appears during the trial and before submission to the jury or court, that a mistake has been made in charging the proper offense in the indictment or information, the court may order a discontinuance of trial without prejudice to the prosecution. The accused, if there is good cause to detain him, may be recognized to appear at the same or next succeeding term of court, or in default thereof committed to jail. In such case the court shall recognize the witnesses for the state to appear at the same time and testify."

In the absence of any statutory provision, the general rule is, that the discharge of a jury impaneled on a trial under a void indictment does not entitle the defendant to his release

and is not a bar to further prosecution of the same offense under a valid indictment. American Jurisprudence, Criminal Law, Section 408.

The same rule applies if the defendant is indicted on one charge and the evidence proves him guilty of some other charge. These rules are sound and logical because under either of such conditions, the accused could not be legally convicted anyway, so for that reason, never was in jeopardy. *State* v. *Brown*, 47 Ohio St., 102.

What then is the meaning of Section 2945.14, Revised Code, under which the court proceeded in this case? To decide this, we feel that we also have to look at some other sections of the Revised Code dealing with criminal procedure and double jeopardy. Section 2945.36, Revised Code, was previously quoted herein. Other applicable sections are:

"*Section 2943.07, Revised Code—What is not former acquittal.* If a defendant was formerly acquitted on the ground of variance between the indictment or information and the proof, or if the indictment or information was dismissed, without a judgment of acquittal, upon an objection to its form or substance, or in order to hold the defendant for a higher offense, it is not an acquittal of the same offense.

"*Section 2943.08, Revised Code—What is former acquittal.* Whenever a defendant is acquitted on the merits, he is acquitted of the same offense, notwithstanding any defect in form or substance in the indictment or information on which the trial was had.

"*Section 2943.09, Revised Code—Conviction or acquittal of a higher offense?* When a defendant has been convicted or acquitted, or has been once in jeopardy upon an indictment or information, the conviction, acquittal, or jeopardy is a bar to another indictment or information for the offense charged in the former indictment or information, or for an attempt to commit the same offense, or for an offense necessarily included therein, of which he might have been convicted under the former indictment or information."

These code sections, we feel, are pretty nearly in accord with the rules applied by the various courts with respect to double jeopardy and was undoubtedly an effort on the part of the legislature to codify the existing rules applicable thereto.

The meaning of Section 2945.14, Revised Code, therefore, must be interpreted in light of the other sections, but keeping in mind at all times that the defendant's rights are established by the Constitution of Ohio and that neither the legislature, by the enactment of a statute, nor this court, nor any other court can take the rights away from him if, in fact, he is protected by the Constitution.

The Supreme Court of Ohio in the case of *Mitchell* v. *State*, 42 Ohio St., 383, has decided the question that we feel is controlling in this case. In the *Mitchell case*, the defendant was charged with shooting "one George Eigensee with *intent to kill him.*" It appeared by the evidence that the defendant did not shoot the victim, but did shoot at him. The judge presiding at the trial, and against the objection of the defendant, made the following order:

"It appearing to the court that a mistake has been made in charging the proper offense in the indictment, the court doth discharge the jury without prejudice to the prosecution; to all which the defendant Mitchell then and there excepted."

Subsequently, the defendant was indicted in the same form as previously, except he was charged with shooting *at* the victim instead of shooting him. The defendant entered a plea of double jeopardy and the prosecuting attorney demurred. The court sustained the demurrer, the defendant was tried, convicted and sentenced. The Supreme Court of Ohio reversed the lower court and ordered the defendant released. In the opinion, the court, speaking of the code section then in effect which is now Section 2945.14, Revised Code, stated at Page 397:

"Obviously, in our opinion, this provision should be construed as applying to cases in which there could be no conviction on the indictment on account of variance between the proof and allegations. In such case, where the evidence discloses the fact that the prisoner has committed a crime of which he cannot be convicted on that indictment, the presiding judge is made a committing magistrate, so as to prevent a failure of justice, through the escape of one who ought to be punished. Suppose the second grand jury had returned an indictment for an assault only. Could Mitchell have been lawfully convicted on such an indictment, notwithstanding he might have been convicted of

the same assault on the first trial? I submit, the statute cannot receive the construction contended for by the state; but aside from that, it is the duty of the court to so construe the provision that it will be valid. It is clear that, construed as contended for by the state, the provision would be plainly unconstitutional.

"We must look to the condition of the law as it existed in 1802, when it was ordained that no person 'shall be twice put in jeopardy for the same offense,' which guaranty was reasserted, in the same words, in our present constitution; and as to the state of the law, in the particular we are considering it, there was no uncertainty in this state. Plainly, according to all the cases, a discharge under such circumstances, operated then as an acquittal; and the constitutional provision having been adopted with that principle incorporated in it, the legislature cannot alter or abridge it."

Cases from other jurisdictions cited in the opinion in the *Mitchell case* as holding to the same ruling are *People* v. *Hunckeler*, 48 Col., 331 and *Commonwealth* v. *Williams*, 78 Ky., 93. The Syllabus paragraphs in the *Mitchell case* are as follows:

"1. In this state, neither the common law in relation to crimes, nor the common law distinction between felonies and misdemeanors, nor the doctrine of merger in criminal cases, has at any time existed; the accused may be found guilty of the principal offense charged in the indictment, or acquitted thereof and found guilty of any offense in terms or by necessary implication charged in the indictment; the constitutional inhibition against a second trial for the same offense, embraces all criminal prosecutions; and the rule is, that the accused is once in jeopardy, when the plea of not guilty is interposed to a valid indictment, and the jury is sworn.

"2. While a jury in a criminal case may, in certain circumstance, be discharged, and the accused lawfully subjected to another trial, this can only be done where he has consented to the discharge, or been guilty of such fraud in respect to the conduct of the trial as that he was in no real peril, or where there is urgent necessity for the discharge, such as the death or serious illness of the presiding judge or a juror, the serious illness of the prisoner, the ending of term before verdict, or the inability of the jury to agree, after spending such length of time in deliberation as, in the opinion of the judge, sustained

by the facts disclosed in the record, renders it unreasonable and improbable that there can be an agreement.

"3. In the absence of such consent or urgent necessity, if it appear that in fact the same identical act has been charged successively in two valid indictments, upon one of which the accused has been in jeopardy by a trial, and that the evidence necessary to support the second indictment would have been sufficient to prove a legal conviction upon the first, the plea of former jeopardy to the last indictment will be sustained and, ordinarily, otherwise, not. (*Price* v. *The State*, 19 Ohio, 423, followed and approved.)

"4. Upon the trial of A., upon indictment under Section 6820, Revised Statutes, in which it is charged that he did shoot B. with intent to kill him, where the evidence shows that A. did unlawfully shoot at B., with such intent, at the time and place and with a loaded weapon as charged but that the bullet failed to touch B.'s person, A. may be found guilty of an assault, and punished by fine and imprisonment, under Section 6823, Revised Statutes; and where, in such case the court, assuming to act under Section 7303, Revised Statutes, discharges the jury after the evidence is heard, against the objection of the accused, with a view to a prosecution against him for shooting at B., with intent to kill him, such discharge is a virtual acquittal of A., as to all the matters charged in the indictment.

"5. Section 7303, Revisted Statutes, constitutes the presiding judge, in effect, a committing magistrate, so as to prevent a failure of justice with respect to cases where a crime is shown by the evidence to have been committed by the accused, but he cannot be convicted of any offense under the indictment upon which he is on trial; and, consistently with the constitution (Art. 1, Sec. 10), the provision cannot have a more comprehensive meaning.

The Circuit Court of Lucas County in *Horner* v. *State*, 8 Ohio Circuit Court Reports (NS), 441, held that a proper case arose for the application of Section 7303, Revised Statutes, which is now Section 2945.14, Revised Code, when the defendant was charged with the theft of property belonging to one person and the evidence proved him guilty of the theft of property belonging to another person. The court said at Page 450:

"Now, if all that be so, we think that an acquittal or conviction upon the charge for the stealing of the property of one would not be a bar to a subsequent prosecution for the stealing of the property of the other. It would require different proof; it would require different evidence as to ownership; and, having these views, we think the judge upon the first trial was justified in taking the action which he did when it was discovered that the ownership was not in the person who had been named in the indictment as the owner. We think that a proper case arose for the application of Section 7303, Revised Statutes: (Now Section 2945.14, Revised Code)."

Obviously, this reasoning is logical because even in the absence of the statute the court had the same right to discharge the jury when the evidence did not prove or varied from the charge. In that case, the defendant was not in jeopardy because he could not have been legally convicted anyway due to variance between the charge and the proof. There was no question of lesser offense involved. That, however, is not true in this case.

So far as we can determine, the *Mitchell case* is still the law of Ohio and until the Supreme Court holds otherwise, we are bound by it. We do not, however, disagree with it. In considering its application we are always reminded of the law stated by *State* v. *Billotta* at the beginning of this opinion, that the defense of double jeopardy being a constitutional right, neither the legislature, nor the courts can deprive a citizen of this right. We think that in considering this case in light of all the rules of law herein stated, that there can be no doubt that the defendant has been once in jeopardy for the offense charged in the first count of the indictment.

The demurrer of the State is, therefore, overruled and the Defendant's plea is, therefore, sustained.